Filed 2/28/14  P. v. Peotter CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>CHARLES ROBERT PEOTTER,<br><br>  Defendant and Appellant. | H038909<br>(Santa Clara County<br> Super. Ct. No. C1119227) |

A jury found defendant Charles Robert Peotter guilty of first degree burglary and possession of burglary tools.  (Pen. Code, §§ 459, 460, subd. (a), 466.)[1]  The trial court found true six prior prison term enhancements, but the court struck four of them.  The court sentenced defendant to six years in prison and imposed a restitution fine of $1,440, among other fines.

On appeal, defendant contends the trial court erroneously excluded exculpatory testimony in violation of his constitutional rights and the rules of evidence.  Defendant also claims the court violated his ex post facto rights by imposing a restitution fine based on a statutory minimum that became effective after he committed the offense.

We find no error in the court's exclusion of the assertedly exculpatory testimony. However, we find the court erred in imposing a restitution fine in the amount of $1,440.

---

[1] Subsequent undesignated statutory references are to the Penal Code.

We will reduce the restitution fine to $1,200, and we will affirm the judgment as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts of the Offense*

Kevin Chong, the victim, lived and worked at his glass-blowing business in a warehouse space in downtown San José. On the afternoon of November 9, 2011, Chong came home to the warehouse and spotted someone's legs inside his residence. Chong was concerned because nobody else was supposed to be in the building. He followed the intruder and spotted an open sliding door. At that point, Chong saw defendant just outside the door. Chong also noticed that his (Chong's) bicycle—which he had stored inside—was outside the door.

Chong asked defendant what he was doing inside the building. Defendant falsely claimed that he lived there, and walked back into the building. Chong followed defendant into the building. Defendant then yelled at Chong. Chong was afraid defendant was attempting to start a fight. Defendant walked towards Chong, and Chong retreated. Chong started to call 911 from his cell phone; defendant told him not to. Chong then moved to another room to dial 911 from a land line. At that point, defendant left the building. While Chong was on the phone with the 911 dispatcher, he went outside to look for defendant. Chong saw his bicycle hanging on a fence, and defendant was in the yard. Defendant picked up a tree branch and raised it over his head while walking towards Chong. Chong attempted to avoid defendant while remaining on the phone with the 911 dispatcher, who told Chong a police officer was arriving. Defendant then jumped the fence.

San José Police Officer John Doktor, who was on patrol in the area, responded to a radio call regarding the burglary. While on route to the scene, Officer Doktor saw defendant run down a highway embankment and hide behind a light pole. Defendant fit the description of the suspect Officer Doktor heard on the radio call, so he decided to stop

2

and question defendant. Defendant was breathing heavily and sweating. Officer Doktor asked him why he was on the highway embankment. Defendant said he was smoking a cigarette. Officer Doktor testified that he then detained defendant because "he kind of alluded to the fact that he was at a business and fleeing from a business." Officer Doktor searched defendant and found five car keys, pieces of porcelain from spark plugs, a flashlight, and a folding knife. Some of the keys had worn teeth or no teeth at all. Officer Doktor opined that these items are frequently used for burglaries and car break-ins.

Defendant, when questioned by the police, admitted that he had entered Chong's residence by crawling through a window. Defendant claimed he was looking for a friend who used to live in the building. Defendant admitted he was inside the building when someone came in through the front door, causing defendant to exit through a sliding door. Defendant said he moved the bicycle onto the fence so he could use it as leverage to climb the fence. He further admitted that he picked up a tree branch in an attempt to scare Chong before jumping over the fence and fleeing.

Defendant also testified at trial. He said he climbed a fence around the back of the warehouse because he had seen a bicycle there, and he did not think it belonged to anyone. He testified that Chong then came out of the building and started yelling at him. Defendant claimed he stood in the yard while Chong was dialing the police on his telephone. When Chong went back into the building, defendant took the bicycle and tried to throw it over the fence, but the bicycle got stuck on the fence. Defendant testified that he heard Chong come back outside, so defendant picked up a stick as a "reflex." After throwing down the stick, he climbed the fence and left.

Defendant denied telling the police that he had entered Chong's residence by climbing through a window. He also denied telling the police that he had encountered Chong inside the building, and he denied telling them he exited the building through a

3

sliding door. Defendant testified that he told the police he had jumped the fence to look at the bicycle when Chong came out of the building and started yelling at him.

Defendant admitting possessing the keys, the flashlight, and the folding knife, but he claimed the porcelain pieces were actually pieces of drywall. He admitted prior convictions for several felony thefts, petty theft, receiving stolen property, and unauthorized use of a vehicle.

B. *The Evidentiary Ruling at Issue*

In cross examination, defense counsel questioned Officer Doktor about what defendant said when Officer Doktor initially stopped him by the highway embankment:

"[Question:] And then you asked if he was running away from anybody?

[Answer:] Yes.

[Question:] And you mentioned this earlier, that he said, 'Yeah. The guy was yelling at me?' "

Before Officer Doktor answered the question, the prosecution objected on the basis of facts not in evidence. The court sustained the objection on hearsay grounds. Outside the presence of the jury, defense counsel argued that the prosecution, in its direct examination of Officer Doktor, had already elicited a portion of defendant's statement to Officer Doktor. Citing the rule of completeness, defense counsel argued that she should be allowed to question Officer Doktor about the rest of defendant's statement to Officer Doktor. Defense counsel's offer of proof referred to Officer Doktor's police report. Officer Doktor had reported that when he asked defendant if he was running from anybody, defendant replied "Yeah the guy was yelling at me." The police report also said that when Officer Doktor asked defendant if that had occurred at a business, defendant responded, "Yes. He opened the door and started yelling at me." The court again sustained the objection.

Before the close of defendant's case, defendant sought to recall Officer Doktor to testify to the excluded statement on the grounds that the evidence constituted a prior

4

consistent statement. The trial court denied the request on the grounds that defendant had a motive to fabricate the statement at the time he made it to Officer Doktor. The court thereby found defendant had failed to lay the foundation for the admission of a prior consistent statement.

C. *The Verdict and Sentence*

The jury found defendant guilty of first degree burglary and misdemeanor possession of burglary tools. (§§ 459, 460, subd. (a), 466.) The jury acquitted him on one count of exhibiting a deadly weapon other than a firearm. (§ 417, subd. (a)(1).) The trial court found true six prior prison term enhancements, but struck four of them.

The court sentenced defendant to a total term of six years, composed of the middle term of four years consecutive to two years for the two remaining enhancements. Among other fines, the court imposed a $1,440 restitution fine "under the formula permitted by Penal Code section 1202.4(b)."

## II. DISCUSSION

A. *Exclusion of Defendant's Statement to Officer Doktor*

Defendant contends the trial court erred by excluding, on hearsay grounds, defendant's statement to Officer Doktor that defendant was running from a business because someone there had yelled at him. Defendant argues that the statement was exculpatory, and that the court erroneously excluded it in violation of Evidence Code sections 356 (the rule of completeness) and 791 (prior consistent statement). Defendant claims the erroneous ruling violated his constitutional rights to due process, the right to confront witnesses against him, and the right to present a defense. The Attorney General contends the trial court did not err in excluding the evidence, and that defendant forfeited his claims of constitutional violations by failing to object on those grounds.

5

1. *Standard of Review*

We apply the abuse of discretion standard of review to a trial court's determination of whether evidence is admissible under Evidence Code sections 356 or 791. (*People v. Parrish* (2007) 152 Cal.App.4th 263, 274; *People v. Breaux* (1991) 1 Cal.4th 281, 302.) A ruling reviewed for abuse of discretion "must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

2. *Merits of the Claim Under Evidence Code Section 356*

Evidence Code section 356 provides, in relevant part, "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; [. . .] and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence." (Evid. Code, § 356.) "The purpose of this section is to prevent the use of selected aspects of a conversation, act, declaration, or writing, so as to create a misleading impression on the subjects addressed." (*People v. Arias* (1996) 13 Cal.4th 92, 156.)

Officer Doktor testified on direct examination that when he detained defendant by the highway embankment, "he kind of alluded to the fact that he was at a business and fleeing from a business." Defendant contends this testimony was misleading and incomplete in the absence of defendant's further statement—at least according to defense counsel's offer of proof—that defendant was running from the business because "the guy was yelling at me." We do not find Officer Doktor's initial testimony to be misleading. As defendant admitted, he *was* fleeing from a business. Officer Doktor said nothing about *why* defendant was fleeing the business. Because nothing in Officer Doktor's testimony misled the jury, the trial court did not abuse its discretion in refusing to allow

6

further questioning on the topic. As to defendant's claims of constitutional error, none of the authorities he cites support his claims. We find no constitutional error.

Furthermore, even assuming the trial court erred in any respect, the error would have been harmless beyond a reasonable doubt. In his trial testimony, defendant testified twice that Chong came out of the building and started yelling at defendant while he was outside the building. The jury clearly discredited this testimony, as it convicted defendant of burglary, which required the jury to agree that defendant entered the building. It is unlikely the jury would have been persuaded otherwise if Officer Doktor had testified that defendant made the same statement to him. Moreover, there is nothing inherently exculpatory about defendant's claim that Chong yelled at him. Chong's yelling at defendant would have been consistent with defendant's intrusion into Chong's residence. The excluded statement actually inculpated defendant by placing him at the scene of the crime. Thus, even if Officer Doktor had testified to defendant's full statement, the jury still would have convicted him beyond a reasonable doubt. For these reasons, we find defendant's claim without merit.

3. *Merits of the Claim Under Evidence Code Section 791*

Evidence Code section 1236 provides a hearsay exception for prior statements made by a witness if the statement is consistent with the witness' testimony and complies with Evidence Code section 791. Under Evidence Code section 791, subdivision (b), a statement previously made by a witness that is consistent with his trial testimony is admissible if "An express or implied charge has been made that his testimony at the hearing is recently fabricated or is influenced by bias or other improper motive, and the statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen." (Evid. Code, § 791, subd. (b).)

Defendant contends his statement was consistent with his trial testimony, and that he made the statement to Officer Doktor before he was charged with the crime. Defendant argues that he thereby made the statement before a particular motive to

7

fabricate the statement arose. However, when defendant first encountered Officer Doktor, he clearly had a motive to fabricate the statement: the desire to avoid being punished for his involvement in the burglary. That is the same motive he had for fabricating his testimony at trial. Defendant identified no other "express or implied charge" made by the prosecution for what might have motivated defendant to testify untruthfully. Defendant therefore failed to lay the proper foundation for a hearsay exception under Evidence Code section 791.

Accordingly, we find no abuse of discretion in the trial court's refusal to allow defendant to recall Officer Doktor. Even assuming the court had erred, any error would have been harmless beyond a reasonable doubt for the reasons set forth above.

B. *The Amount of the Restitution Fine*

Defendant contends the trial court erred in imposing a restitution fine of $1,440. At the time of the offense in November 2011, the effective version of section 1202.4 imposed a restitution fine "at the discretion of the court" of "not […] less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000) . . . ." (Former § 1202.4, subd. (b)(1), Stats. 1994, ch. 46, § 4.) Additionally, section 1202.4 provided "In setting a felony restitution fine, the court may determine the amount of the fine as the product of two hundred dollars ($200) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (Former § 1202.4, subd. (b)(2).) Defendant argues the court relied on the version of section 1202.4 in effect at the time of the sentencing hearing in 2012, which imposed a minimum fine of $240. The court then multiplied this amount by the number of years in defendant's sentence (six) and the number of felony counts on which he was convicted (one) to reach the amount of $1,440. Defendant contends this constituted an ex post facto violation. The Attorney General contends the trial court did not err because it had the discretion to impose a fine in an

8

amount greater than the minimum. Additionally, the Attorney General argues that defendant forfeited his claim by failing to object.

Defendant is correct that application of the later version of the statute would have constituted error. "A restitution fine qualifies as punishment for purposes of the prohibition against ex post facto laws." (*People v. Saelee* (1995) 35 Cal.App.4th 27, 30.) Furthermore, application of the later version of the statute in violation of his ex post facto rights would have resulted in an "unauthorized sentence," thereby falling under an exception to the forfeiture doctrine. (*People v. Scott* (1994) 9 Cal.4th 331, 354.) However, the Attorney General is correct that the statute granted the trial court discretion to impose a fine greater than the minimum.

We are persuaded that the trial court intended to impose the minimum restitution fine. The trial court expressly imposed the amount of $1,440 "under the formula permitted by Penal Code section 1202.4(b)." The formula defined under section 1202.4, subdivision (b)(2), expressly refers to the *minimum* amount of the fine pursuant to subdivision (b)(1). It is thereby apparent that the trial court, in referring to the formula, intended to multiply the minimum fine amount by a factor of six. Because the minimum fine amount under section 1202.4 was $200 at the time of the offense, we will reduce the total amount of the restitution fine to $1,200.

### III. DISPOSITION

The restitution fine shall be reduced to $1,200. As modified, the judgment is affirmed.

_____

Márquez, J.

WE CONCUR:


_____

Bamattre-Manoukian, Acting P. J.


_____

Grover, J.